52

[847 NYS2d 7]

Federal Insurance Company, Individually and as Subrogee of Galaxy General Contracting Corp., Respondent, v North American Specialty Insurance Co. et al., Appellants.

First Department, November 8, 2007

### APPEARANCES OF COUNSEL

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, New York City (*Debra A. Adler* and *Eugene T. Boulé* of counsel), for North American Specialty Insurance Co. and another, appellants.

*Rivkin Radler LLP*, Uniondale (*Evan H. Krinick, Peter C. Contino* and *Harris J. Zakarin* of counsel), for Bruce A. Bendix and another, appellants.

*Quirk and Bakalor, P.C.*, New York City (*Timothy J. Kean* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Plaintiff Federal Insurance Company, claiming it should have contributed only $1,000,000 to the settlement, sues individually and as subrogee of Galaxy General Contracting Corp. to recoup half of the $2,000,000 it paid as Galaxy's excess liability insurer to settle an underlying personal injury action in which Galaxy was a named defendant. In this action, Federal named as defendants Rivkin Radler LLP and Bruce A. Bendix (collectively Rivkin), who represented Galaxy in the underlying action, asserting legal malpractice, and also Allied World Assurance Company (U.S.), Inc., formerly known as Commercial Underwriters Insurance Company (CUIC), Galaxy's primary liability

insurer, asserting as against it bad faith, indemnity and legal malpractice.

In its amended complaint, Federal alleged that CUIC insured Galaxy under a commercial general liability (CGL) policy with a limit of $1,000,000. Federal provided Galaxy with excess coverage up to $10,000,000 over its underlying coverage, including CUIC's CGL policy. In addition, pursuant to its contractual indemnity obligation as set forth in its contract with the owners of the property where the underlying accident took place—NYC Partnership Housing Development Fund Company, Inc., Morningside-117 LLC and Harlem Community Development Corporation—Galaxy purchased from CUIC for the owners' benefit a separate owners and contractors protective liability policy (OCP) with a limit of $1,000,000.

In the underlying action commenced in Supreme Court, Bronx County, Rafael Bermejo, an employee of one of Galaxy's subcontractors, who was injured when he fell from a scaffold, alleged negligence and violations of Labor Law § 240 (1) and § 241 (6) in connection with construction work he was performing at the owners' premises, 371 West 117th Street in Manhattan. At the inception of that action, the same counsel represented both general contractor Galaxy and the owners, and issue was joined by interposition of a single answer on their behalf. Subsequently, CUIC assigned separate counsel for Galaxy and the owners; Rivkin was assigned to represent Galaxy.

The owners thereafter moved for leave to serve an amended answer to assert cross claims against Galaxy for contractual and common-law indemnification, leave to file a late motion for summary judgment, and for summary judgment on the cross claims. Although opposing the motion on several grounds on Galaxy's behalf, Rivkin did not raise the bar of the antisubrogation rule. Supreme Court (Bertram Katz, J.) granted leave to the owners to amend their answer and to file a late summary judgment motion as well as summary judgment, albeit conditional, on their contractual and common-law indemnification claims, holding that the record yielded no evidence of the owners' presence at the work site or of any responsibility to control or supervise the work there. While Rivkin subsequently raised the antisubrogation issue in a motion to renew or reargue, the court denied the motion on the ground that Galaxy failed to offer a satisfactory explanation for failing to present the argument on the original motion.

The parties thereafter entered into negotiations to settle the underlying action. CUIC, prepared to tender the full $1,000,000

limit of its CGL primary policy for Galaxy but adamant that it would make no contribution on behalf of the owners under the OCP policy, asked Federal, as excess carrier, to negotiate the loss beyond the $1,000,000 primary policy limit. At a mediation conference, Rivkin, on behalf of Galaxy, offered the full $1,000,000 limit of the CGL policy and argued that the owners' OCP policy applied and that a contribution thereunder should be made. The owners, however, refused to contribute, maintaining that they were, at most, passive tortfeasors. Meanwhile, Bermejo rejected Galaxy's $1,000,000 settlement offer, indicating he would settle the action for an amount between $2,500,000 and $5,000,000.

In a letter dated November 18, 2003, Federal memorialized its position that CUIC was required to exhaust the limits of both the CGL and OCP policies before it would become obligated to make any payment. According to Federal, irrespective of any indemnity rights that the owners might have over against Galaxy, since CUIC, the insurer of both the CGL and the OCP policies, "was obligated to defend each of its insureds, CUIC was barred by the antisubrogation doctrine from becoming subrogated to the right of any one of its insureds against any of its other insureds." Bermejo's action was eventually settled for $3,000,000, with CUIC paying $1,000,000, the limit of its CGL primary policy, on behalf of Galaxy, and Federal paying the remaining $2,000,000 out of its excess coverage for Galaxy. In settling and discontinuing that action, the parties otherwise preserved the cross claims between the owners and Galaxy and reserved all of their rights as between each other, thus setting the stage for the commencement of this action.

Federal asserted five causes of action—three against CUIC alone and two against CUIC together with Rivkin. In its first cause of action, Federal alleged that CUIC violated the antisubrogation rule in that, as the real party in interest, it claimed in the names of the owners a right of indemnity against Galaxy, its own insured. In its second cause of action, Federal alleged that CUIC acted in bad faith in defending Galaxy against the owners' indemnity claims by failing to raise the antisubrogation rule in opposition to the owners' motion for summary judgment. Had the rule been invoked, Federal claims, the court in the Bermejo action "would have applied [it] to bar CUIC from becoming subrogated to the rights of some of its insureds . . . against another of its insureds . . . and limited any right of indemnity to the amount above the $1,000,000 limit of CUIC's

OCP." Federal's third cause of action against CUIC alleged a similar theory of liability, but as Galaxy's subrogee.

Federal's fourth cause of action, against both CUIC and Rivkin, alleged legal malpractice. Without asserting a client relationship with Rivkin or alleging the existence of privity or any allegations of "near privity," Federal claimed merely that CUIC and Rivkin owed Galaxy a duty to defend. Federal further alleged that Rivkin was negligent in opposing the owners' motion for summary judgment on their indemnification claims by failing to assert antisubrogation or to apprise Federal in a timely manner that the owners had asserted such cross claims. According to the complaint, had Rivkin raised the antisubrogation rule, the court would have "limited any right of indemnity to the amount above the $1,000,000 limit of CUIC's OCP." Federal's fifth cause of action, also against CUIC and Rivkin, alleged a similar theory of liability, but as Galaxy's subrogee.

Rivkin moved, pre-answer, pursuant to CPLR 3211 (a) (1), (3) and (7), to dismiss the complaint against it. CUIC thereafter cross-moved for similar relief, arguing that Federal suffered no damages, individually or on behalf of Galaxy. It also argued that Federal failed to state a cause of action for bad faith.

In support of its motion, Rivkin argued that even assuming, arguendo, its negligence for failing to assert the antisubrogation rule in opposition to the owners' summary judgment motion on the issue of indemnification, the complaint still failed for several reasons. It reasoned that Federal could not establish that it or its subrogor, Galaxy, sustained any ascertainable damages. Although Galaxy was required by the order granting summary judgment to indemnify the owners, neither Galaxy nor Federal made any payment as a result of that order. Rather, Rivkin argued, Galaxy's settlement of the Bermejo action represented the amount that Galaxy reasonably owed to the plaintiff for his injuries. Since Galaxy's liability to Bermejo was joint and several with the owners, Bermejo could look to Galaxy for payment of his damages. Federal conceded that if the action had proceeded to trial, Galaxy would have been found liable, and the $3,000,000 settlement was reasonable. By paying Bermejo $1,000,000, the limit of its CGL policy, Galaxy, Rivkin's client, paid through its insurer what it believed it would have had to pay after a trial. It paid no more and no less, and suffered no damages as a result of the settlement. Since any loss Federal sustained was derivative of Galaxy's loss and Galaxy suffered none, Rivkin argued, then neither did Federal.

Rivkin further argued that Federal could not establish that it or its subrogor, Galaxy, could have obtained a better result in the Bermejo action "but for" its alleged negligence in failing to assert antisubrogation in response to the owners' motion for indemnification. As it explained, even if the court denied the owners' motion based upon the antisubrogation rule, Galaxy still would have been liable for 100% of Bermejo's damages, without any right of contribution or indemnity from the owners. Finally, Rivkin argued that Federal lacked standing individually to bring a legal malpractice claim either as Galaxy's subrogee or directly, given the lack of privity between Rivkin and Federal or any allegations to support a claim for negligent representation based on a relationship approaching privity. As it argued, Rivkin was retained by CUIC to serve as Galaxy's counsel in Bermejo's action, in which Federal had its own counsel.

In opposition, Federal argued that had the antisubrogation rule been asserted, it would have been applied to prevent CUIC from becoming subrogated to the owners' indemnity rights as asserted in their cross claims against Galaxy. It also argued that had the antisubrogation rule been asserted, CUIC's OCP policy would have remained exposed and its proceeds subject to execution in a judgment against each of the jointly and severally liable defendants. Finally, Federal argued that it had standing to assert a legal malpractice claim in its own right, contending that the "near privity" requirement was present.

In reply, Rivkin argued, inter alia, that any claim based on near privity is limited to negligent misrepresentation claims, and here, Federal never alleged that Rivkin made any misrepresentation to it that caused it to settle with Bermejo without contribution from the owners. Rather, Federal's claim is that Rivkin, in representing Galaxy, breached a duty to Galaxy by failing to assert the antisubrogation rule.

Supreme Court denied Rivkin's motion, sustaining Federal's cause of action as Galaxy's subrogee because, although Federal was silent as to Galaxy's damages, "Federal's damages may have led to some damages also being suffered by Galaxy" (2006 NY Slip Op 30219[U], *12). The court also determined that Federal could assert a direct malpractice claim against Rivkin, holding, "An excess insurer may sue the attorneys assigned by the primary insurer to represent the insured on the ground that the counsel owes a duty to the insured and the excess insurer, as the insured's subrogee" (id.). Finally, the court held that

near privity existed between Rivkin and Federal to support a claim for legal malpractice between an attorney and a third party. As to the cross motion, Supreme Court, stating that a "primary carrier owes its insured and the excess insurer a duty to exercise good faith in handling a claim," held that Federal should have the opportunity to proceed with its claim that CUIC "managed the Bermejo case to Federal's disadvantage" (*id.* at *10). It thus left standing the first three causes of action but dismissed the legal malpractice claims asserted against CUIC in the fourth and fifth causes of action. Both Rivkin and CUIC appeal from these adverse determinations.

■ None of the determinations reached to justify denial of Rivkin's motion withstands scrutiny, and its dismissal motion should have been granted. To state a cause of action for legal malpractice, a complaint must allege the negligence of the attorney, that the negligence was a proximate cause of the loss sustained, and actual damages (*Leder v Spiegel*, 31 AD3d 266, 267 [2006], *affd* 9 NY3d 836 [2007]). In addition, "New York courts impose a strict privity requirement to claims of legal malpractice; an attorney is not liable to a third party for negligence in performing services on behalf of his client" (*Lavanant v General Acc. Ins. Co. of Am.*, 164 AD2d 73, 81 [1990], *affd* 79 NY2d 623 [1992]; *see also D'Amico v First Union Natl. Bank*, 285 AD2d 166, 172 [2001], *lv denied* 99 NY2d 501 [2002]). Thus, absent an attorney-client relationship, a cause of action for legal malpractice cannot be stated (*Baystone Equities, Inc. v Handel-Harbour*, 27 AD3d 231 [2006]; *Linden v Moskowitz*, 294 AD2d 114, 115 [2002], *lv denied* 99 NY2d 505 [2003]).

In the instant matter, there is no privity between Rivkin and Federal; Rivkin's duty in the Bermejo lawsuit ran only to its client, Galaxy, and not to any third party. When counsel is assigned to defend an insured, "the paramount interest independent counsel represents is that of the insured, not the insurer" (*Feliberty v Damon*, 72 NY2d 112, 120 [1988]). Assigned counsel's duty is "to the insured, and if there is a conflict of interest between the carrier and the insured, . . . he cannot represent both" (*Trieber v Hopson*, 27 AD2d 151, 153 [1967]; *see also Schneider v Canal Ins. Co.*, 1999 WL 689476, *14, 1999 US Dist LEXIS 13618, *45 [ED NY 1999], *affd* 210 F3d 355 [2d Cir 2000] ["It is . . . well-settled that the counsel retained by an insurance company to represent an insured has an attorney-client relationship only with the insured, and owes its entire allegiance only to the insured"]). Since legal malpractice claims

by primary insurers against assigned counsel are not viable, the instant legal malpractice action by Federal, an excess insurer, fares no better.

Nor is Federal's individual claim of legal malpractice saved by *Allianz Underwriters Ins. Co. v Landmark Ins. Co.* (13 AD3d 172 [2004]), in which this Court recognized the right of an excess insurer, acting as an insured's equitable subrogee, to sue a law firm for legal malpractice in its representation of an insured. The case stands for no more than a recognition of the direct relationship between an attorney and his or her client, to whose rights the client's insurer can be subrogated (*see Great Atl. Ins. Co. v Weinstein,* 125 AD2d 214 [1986] [sustaining excess insurer's legal malpractice claim based on status as equitable subrogee of insured]). Thus, Federal's fourth cause of action, which seeks relief individually, not as Galaxy's subrogee, based on Rivkin's alleged legal malpractice, does not fall within the holding of *Allianz.*

Strict adherence to the rule prohibiting legal malpractice claims by nonclients serves an important policy consideration. An attorney's paramount duty is to protect zealously the interests of his or her client, and if that duty is breached and the breach proximately causes injury, the attorney may be subject to a malpractice claim, but only by his or her client. While, concededly, third parties may be interested in the actions by another's attorney and even benefit therefrom, that circumstance does not give rise to a duty on the part of the attorney to the third party. Were it otherwise, the attorney would be faced with the constant burden of weighing all the competing interests attendant upon such diverse obligations to the potential detriment of his or her client, to whom he owes undivided fidelity.

Nor has Federal pleaded sufficient facts to demonstrate a relationship with Rivkin "so close as to touch the bounds of privity" (*Allianz Underwriters,* 13 AD3d at 175). While, as noted, strict privity is generally required to maintain a cause of action for legal malpractice, a relationship of near privity may, in limited circumstances not present here, be sufficient to sustain a legal malpractice claim (*see id.*). The exception applies in cases of negligent misrepresentation (*see Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377 [1992] [attorney may be held liable to third parties for submitting a false opinion letter upon which a third party relied]).

In reaching its determination in *Prudential,* the Court of Appeals relied on *Credit Alliance Corp. v Arthur Andersen & Co.*

(65 NY2d 536 [1985]), which, in certain circumscribed circumstances, extended an accountant's liability to a third party for the preparation of misleading financial reports. As established in *Credit Alliance* and extended to attorneys in *Prudential,* an attorney may be held liable to a third party where the elements of negligent misrepresentation exist. To establish such a claim, a party must allege:

> "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance" (*Prudential,* 80 NY2d at 384; *see State of Cal. Pub. Employees' Retirement Sys. v Shearman & Sterling,* 95 NY2d 427, 434 [2000]).

Although, as noted, this Court, in *Allianz,* sustained a legal malpractice claim on the basis of equitable subrogation, it ruled, in dictum, that on the facts presented on the motion to dismiss, the excess insurer also stated a near privity relationship sufficient to sustain the complaint. In so doing, this Court relied on the three criteria from *Prudential.* In *Allianz,* the excess insurer of Dunlop Tire Corporation commenced a declaratory judgment action alleging breach of fiduciary duty against various insurers and Underberg & Kessler, LLP, the law firm retained by the primary insurer that represented Dunlop in the underlying action, which resulted in a substantial verdict in favor of the plaintiff. Allianz alleged that it and its insured, Dunlop, repeatedly demanded Underberg bring a third-party action against the injured person's employer on the ground, inter alia, of contractual and common-law indemnification. According to Allianz, Dunlop's primary insurer, which also insured the employer, opposed bringing such an action. Underberg wrote to Dunlop's general counsel advising that a third-party action against the employer would fail. A third-party action was never commenced. In *Allianz,* near privity was properly alleged because (1) Underberg knew that its advice as to whether to commence a third-party action would be relied upon by third parties; (2) Allianz relied on Underberg's advice; and (3) Underberg communicated its advice that a third-party action would fail to the third parties, who relied on it (13 AD3d at 175).

Here, no such allegations of near privity are found in either the complaint or the record. Federal's decision to settle the Ber-

mejo action was not based on any affirmative Rivkin representation upon which it relied. Rather, it settled the action because, as it concedes, the case against its insured was clear and the settlement amount was reasonable. In deciding to settle, Federal was advised by its own separate counsel, upon whose advice it relied. Nothing in Federal's complaint alleges that Rivkin made misrepresentations upon which it relied. Its complaint is a plain legal malpractice pleading based on Rivkin's alleged breach of duty to Galaxy but asserted instead, improperly, by Federal. "[O]ur courts have not extended liability in situations where the negligence caused injury to a third party with whom there was no privity" (*Council Commerce Corp. v Schwartz, Sachs & Kamhi*, 144 AD2d 422, 424 [1988], *lv denied* 74 NY2d 606 [1989]). Thus, Federal has failed to allege near privity to sustain its individual claim of legal malpractice (*see e.g. Aglira v Julien & Schlesinger*, 214 AD2d 178, 184-185 [1995]).

■ Federal's fifth cause of action, asserted against Rivkin as subrogee of Galaxy, is also without merit since Galaxy has not suffered any loss. Subrogation is "an equitable doctrine [that] entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" (*North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 294 [1993]; *see also Federal Ins. Co. v Spectrum Ins. Brokerage Servs.*, 304 AD2d 316, 317 [2003]). On the facts presented, Federal has no claim in subrogation. Galaxy has not sustained any loss in the Bermejo claim because of the wrongdoing by any party for the recovery of which Federal can be subrogated. Galaxy did not sustain any damages as a result of Rivkin's failure to raise antisubrogation in opposition to the owners' claims for indemnification. Galaxy's damages in incurring a liability to Bermejo were the result of its own wrongdoing in violating the Labor Law, a fact Federal concedes. Federal also concedes the reasonableness of the settlement of Bermejo's claim for $3,000,000. Thus, Federal's payment of the loss was a result of its own insured's wrongdoing with respect to the Bermejo accident, not a result of wrongdoing by any third party for which Federal can seek recompense as Galaxy's subrogee. As is obvious, the only loss for which Federal seeks recovery is its own loss. Thus, its claim in subrogation must be dismissed (*see e.g. id.*).

■ As to the appeal from the denial of its cross motion to dismiss, CUIC argues that Federal cannot seek indemnification

from CUIC since the court in the Bermejo action on the summary judgment motion found that the owners' liability was purely vicarious and that Galaxy, assuming plaintiff were to prevail at trial, would have full responsibility for the accident. Federal, on the other hand, claims that CUIC and its lawyers (Rivkin) colluded on behalf of the owners to obtain a favorable ruling on indemnification for Bermejo's accident and damages, in violation of the antisubrogation rule, and seeks indemnification from CUIC for the $1,000,000 payment toward settlement that it claims CUIC should have made on behalf of the owners.

The first cause of action presents a collision of two competing principles: antisubrogation and the right of a party, such as a premises owner, which is only vicariously responsible by virtue of the absolute liability imposed for a violation of Labor Law § 240 (1) (*see e.g. Songui v City of New York*, 2 AD3d 706 [2003]), to indemnification from the party actually responsible for the accident (*see Kelly v City of New York*, 32 AD3d 901 [2006]), such as general contractor Galaxy in the instant situation. Even though CUIC issued two separate policies (one to Galaxy and the other to the owners), the antisubrogation rule is applicable (*North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281 [1993], *supra*). As the Court of Appeals has made clear, "a potential conflict of interest arises where the insurer that issued both policies seeks indemnification against [one of the parties to which it issued a policy]" (*id.* at 295-296). As relevant here, the Court observed that an insurer could manipulate the litigation in such a way as to "trigger coverage under other insurance policies held by the contractor such as a workers' compensation or excess policy" (*id.* at 296).

Thus, the antisubrogation rule, if asserted, would have defeated the owners' claims for indemnification from Galaxy. CUIC's exposure, at the time it entered negotiations to settle the Bermejo claim, would have been $2,000,000, not $1,000,000 as was the case after the owners successfully moved for summary judgment on their indemnification claims against Galaxy. Since, however, the conditional award of summary judgment was never appealed or vacated as part of the settlement process, it has res judicata effect and serves to bar any claim that Galaxy has an antisubrogation defense to the owners' indemnification claims (*see Allstate Ins. Co. v American Home Assur. Co.*, 43 AD3d 113 [2007]) or that Federal has an indemnification claim against CUIC based on that nonasserted defense.

■ In the second cause of action, Federal alleges that it suffered damages of $1,000,000 as a result of CUIC's bad faith in

failing to defend Galaxy against the owners' indemnification claims on the basis of the antisubrogation rule. Thus, the same conflict of principles as is manifest in the first cause of action is presented in this claim. Since the *North Star* decision would have barred these claims, Federal's claim that CUIC manifested a "conscious disregard" for Federal's rights (*cf. Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 453-454 [1993]) by allowing one of its insureds, the owners, to escape liability in violation of the antisubrogation rule, thereby removing one of its policies (OCP) from the layer of coverage that had to be exhausted before triggering Federal's excess coverage, sufficiently states a cause of action for bad faith.

Federal's third cause of action, asserted against CUIC as subrogee of Galaxy, alleging bad faith should be dismissed for the same reason as warrants dismissal of its fifth cause of action against Rivkin. Galaxy has suffered no loss as the result of the wrongdoing of another, for the recovery of which Federal could be subrogated. In point of fact, Federal seeks to recover for its own loss.

We have examined the other contentions raised and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered August 3, 2006, which denied the motion of defendants Bendix and Rivkin Radler to dismiss the fourth and fifth causes of action against them and so much of the cross motion of defendants North American Specialty and Allied World as sought dismissal of the first, second and third causes of action, should be modified, on the law, the motion granted dismissing the fourth and fifth causes of action, the cross motion granted to the extent of dismissing the first and third causes of action, and otherwise affirmed, without costs or disbursements.

MAZZARELLI, J.P., SAXE, McGUIRE and KAVANAGH, JJ., concur.

Order, Supreme Court, New York County, entered August 3, 2006, modified, on the law, the motion of defendants Bendix and Rivkin Radler to dismiss the fourth and fifth causes of action against them granted and the cross motion of defendants North American Specialty and Allied World granted to the extent of dismissing the first and third causes of action, and otherwise affirmed, without costs or disbursements.