■ FEDERAL INSURANCE COMPANY, Individually and as Subrogee of Galaxy General Contracting Corp., Respondent, v NORTH AMERICAN SPECIALTY INSURANCE COMPANY et al., Appellants, et al., Defendants. [921 NYS2d 28]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered December 15, 2008, which, to the extent appealed from as limited by the briefs, granted plaintiff's cross motion for summary judgment on its cause of action for bad faith, unanimously reversed, on the law, without costs, and the cross motion denied.

Defendant-appellant Allied World Assurance Company (U.S.) Inc., formerly known as Commercial Underwriters Insurance Company (CUIC), insured Galaxy Contracting Corp. (Galaxy) under a commercial general liability (CGL) policy with a limit of $1,000,000. Plaintiff-respondent Federal Insurance Company (Federal) provided Galaxy with excess coverage up to $10,000,000. In addition, pursuant to its contractual indemnity obligation, Galaxy purchased from CUIC, for the property owners' benefit, a separate owners and contractors protective liability policy (OCP) with a limit of $1,000,000.

The underlying Labor Law action was settled for $3,000,000. This was paid $1,000,000 by CUIC pursuant to the CGL policy and $2,000,000 by Federal pursuant to the excess policy, without prejudice to Federal's right to recover from CUIC. This action followed and, as is relevant to this appeal, in the second cause of action, Federal alleged that it paid an extra $1,000,000 as a result of CUIC's bad faith in failing to defend Galaxy against the owners' indemnification claims on the basis of the antisubrogation rule. In a prior appeal (47 AD3d 52, 64 [2007]), we found that Federal sufficiently stated a cause of action for bad faith.

Under New York law, since an insurer has exclusive control over a claim against its insured once it assumes defense of the suit, it has a duty to act in "good faith" when deciding whether to settle and may be held liable for breach of that duty (*see Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 452 [1993]). This duty also applies where an excess insurer is exposed to liability (*see Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co.*, 61 NY2d 569 [1984]; *Elm Ins. Co. v GEICO Direct*, 23 AD3d 219 [2005]), and requires a primary insurer to give as much consideration to the excess carrier's interests as it does to its own (*Pavia*, 82 NY2d at 453; *St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co.*, 43 NY2d 977, 978-979 [1978]).

An insurer does not breach its duty of good faith when it makes a mistake in judgment or behaves negligently. To establish bad faith, an excess insurer must show that the primary insurer's conduct constituted a "gross disregard" of the excess insurer's interests and that the insurer's conduct involved a "deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer" (*Pavia*, 82 NY2d at 453).

There is no formula to determine whether an insurer acted in good faith. The court must assess, among other factors, the "plaintiff's likelihood of success on the issue of liability, the potential damages award, the financial burden on each party if the insurer refuses to settle, whether the claim was properly investigated, the information available to the insurer when the demand for settlement was made, and . . . any other relevant proof tending to establish or negate the insurer's good faith in refusing to settle" (*see Pinto v Allstate Ins. Co.*, 221 F3d 394, 399 [2d Cir 2000], citing *Pavia*, 82 NY2d at 454-455).

Given these stringent standards, there remains a material issue of fact as to whether CUIC was merely negligent or whether CUIC and/or its counsel were aware that the antisubrogation rule applied and deliberately failed to assert the defense in or-

der to allow the owners to escape liability, thereby removing the OCP policy from the layer of coverage that had to be exhausted before triggering Federal's excess coverage. Although the memos and correspondence submitted by plaintiff could conceivably support a bad faith verdict after trial, it is for the finder of fact to determine whether the documents establish a deliberate plan by CUIC or merely reflect discussions of the consequences of a valid indemnity claim by the owner against Galaxy. Concur— Andrias, J.P., Moskowitz, Freedman and Román, JJ.

McGuire, J., dissents in a memorandum as follows: I disagree with the majority's conclusion that plaintiff Federal Insurance Company (Federal) is not entitled to summary judgment as a matter of law on its second cause of action for bad faith. Accordingly, I would affirm Supreme Court's decision granting Federal's cross motion for summary judgment on that cause of action.

This declaratory judgment action arises from a personal injury action commenced by an employee of a subcontractor who was injured at a construction site. The employee sued the general contractor, Galaxy General Contracting Corporation (Galaxy), and the owners and sponsors of a construction housing project (Owners). Galaxy had obtained two separate primary insurance policies from defendant Commercial Underwriters Insurance Company (CUIC): a commercial general liability (CGL) policy for itself and an owners and contractors protective liability (OCP) policy for the Owners. Each policy provided coverage up to the amount of $1,000,000. Galaxy also obtained a $10,000,000 excess insurance policy for itself from Federal.

At the inception of the action in 1999, CUIC retained one law firm to represent both Galaxy and the Owners. In June 2002, however, CUIC assigned separate defense counsel for Galaxy and the Owners. As CUIC states, it concluded that a potential indemnification claim by the Owners created a conflict of interest between its two insureds. Thereafter, the Owners amended their answer to assert cross claims against Galaxy for contractual and common-law indemnification, and moved for summary judgment on the cross claims. Galaxy opposed the motion but did not raise the antisubrogation rule, i.e., it did not argue that the owners were not entitled to indemnification because they were insured by the same insurer and an insurer "has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered" (*North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 294 [1993]). In March 2003, Supreme Court conditionally granted the indemnification claims because no evidence had been presented

that the Owners either were present at the work site or had any responsibility to control or supervise the work being performed. In a motion to renew or reargue, Galaxy belatedly raised the antisubrogation rule; the motion was denied on the ground that Galaxy had not provided a satisfactory explanation for failing to raise the antisubrogation rule on the original motion. Thereafter, the case was settled for $3,000,000; $1,000,000 was paid by CUIC pursuant to its CGL policy and $2,000,000 was paid by Federal under the excess policy.

On or about November 4, 2005, Federal commenced this declaratory judgment action, individually and as a subrogee of Galaxy, against CUIC. Federal asserted five causes of action, including violation of the antisubrogation rule, bad faith in defending Galaxy against the Owners' indemnification claims, and legal malpractice. CUIC made a pre-answer motion to dismiss and Supreme Court granted the motion with respect to the causes of action for legal malpractice. This Court affirmed the dismissal of those causes of action and also dismissed the causes of action for violation of the antisubrogation rule (47 AD3d 52, 59-63 [2007]). With respect to the cause of action for bad faith, we held that "Federal's claim that CUIC manifested a 'conscious disregard' for Federal's rights by allowing one of its insureds, the owners, to escape liability in violation of the antisubrogation rule, thereby removing one of its policies (OCP) from the layer of coverage that had to be exhausted before triggering Federal's excess coverage, sufficiently states a cause of action for bad faith" (*id.* at 64 [citation omitted]).

In support of its motion for summary judgment, Federal submitted, inter alia, a hand-written memorandum by a CUIC claims manager that diagrams the parties, states that the Owners were not actively negligent in connection with the underlying personal injury action and lays out CUIC'S reason for seeking indemnification: doing so "will save 1 of CUIC's limits." A subsequent note to the Owners' counsel, authored by the same claims manager, states: "Our goal is to get Galaxy the G.C. through its primary coverage . . . and Galaxy's excess carrier to resolve this claim thereby keep[ing] our $1 million for [the Owners] protected. Galaxy's primary and their [*sic*] excess is enough to settle this, the trick is to get Galaxy's excess carrier to agree they're [illegible]." Additionally, in a letter to CUIC regarding a possible settlement, the Owners' counsel advises: "In summary, there is no settlement that makes sense for [the Owners] unless our contribution is substantially less than the $1 million policy limits and there is no further litigation. If, for example, Federal requested that [the Owners] pay $500,000 toward settlement

and agreed not to challenge the indemnification finding, CUIC would be able to end the litigation without risking the full exposure of both its policies in this case."

Federal maintains that these documents establish that pursuant to a plan it developed, CUIC acted to shift the financial responsibility for the personal injury claim to place a greater burden on Federal by triggering the excess coverage instead of CUIC's OCP policy. CUIC maintains that the plan was to protect the Owners, that the documents demonstrate a lack of knowledge of the antisubrogation rule and that this lack of legal knowledge reflects mere negligence (which they blame on counsel retained to represent the Owners) rather than a violation in bad faith of their fiduciary duty to Federal as the excess carrier. CUIC also maintains that after the file was split, i.e., after it retained separate counsel and assigned separate claims handlers to the claims against Galaxy and the Owners, "[t]heir duty ran only to the Owners, *and not to Federal*, which only insured Galaxy."

Under New York law, "the primary carrier owes to the excess insurer the same fiduciary obligation which the primary insurer owes to its insured, namely, a duty to proceed in good faith and in the exercise of honest discretion" (*Hartford Acc. & Indem. Co. v Michigan Mut. Ins.* Co., 93 AD2d 337, 341 [1983], *affd* 61 NY2d 569 [1984]). A primary insurer is considered to act in good faith when it gives the same consideration to the excess insurer's interests that it gives to its own interests (*see Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 453 [1993]; *New England Ins. Co. v Healthcare Underwriters Mut. Ins. Co.*, 295 F3d 232 [2d Cir 2002]). In the context of a bad-faith claim founded on a failure to settle, "the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer" (*Pavia*, 82 NY2d at 453 [citation omitted]).

Here, summary judgment is warranted because CUIC knowingly and deliberately placed its interests ahead of those of the excess carrier to avoid exposure beyond the $1 million limit of the CGL policy it issued to Galaxy. Specifically, the record establishes that CUIC devised and executed a plan to avoid exposure of the Owners' primary policy, i.e., to save one of CUIC's two limits of $1 million, with the knowledge and intent that a successful indemnification claim against its other insured would shift the financial burden to Federal (*id.; see also Hartford Acc.*, 93 AD2d at 341-342).

Nor can CUIC avoid liability on the ground that neither it nor the attorneys it retained to represent the Owners knew that a doctrine called the antisubrogation rule barred the indemnification claim. This defense is predicated not on what CUIC did or did not do, but on what it did or did not know about the law. Even assuming neither CUIC nor the attorneys for the Owners knew of the rule, that lack of knowledge is not a defense for it does not alter the crucial fact that CUIC knowingly and deliberately placed its interest ahead of those of the excess carrier to which it owed the same fiduciary obligation it owed to its insureds. Obviously, to recognize such a defense—CUIC cites no authority recognizing it—would run afoul of the precept that ignorance of the law is not an excuse. Moreover, it would have the unseemly effect of permitting an insurer ignorant of the rule, a rule premised in part on the need to avoid the conflicts of interest inherent in situations in which an insurer provides coverage to two insureds for the same risk (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 472 [1986]), to be in a superior position than an insurer knowledgeable about the rule. The former can avoid a loss for which it provided coverage (here, a $1 million loss) while the latter must pay it. In short, CUIC's liability should turn on the self-serving nature of the conduct it knowingly committed, not on whether it knew that a rule of law prohibited that conduct.

CUIC asserts that it acted in good faith because it was in the Owners' best interest not to trigger coverage under the Owners' OCP policy. More specifically, it maintains that "pressing and protecting the Owner's [*sic*] right of indemnification . . . served, inter alia, to minimize the erosion of the Owners' primary policy, to protect the policy to be available to pay a judgment above any amounts available from Galaxy, and to safeguard the Owners' loss history." The same claims handler who testified to these ostensible reasons for conserving the OCP policy wrote the contemporaneous notes quoted above setting out a very different reason for seeking indemnification: doing so "will save 1 of *CUIC's* limits" (emphasis added). And in the handwritten note quoted above, the claims handler expressly stated that "Galaxy's primary and their [*sic*] excess is enough to settle this." Moreover, when the indemnification motion was made, no other claims had been made against the Owners that might trigger coverage under the OCP policy. In any event, even assuming that its plan to seek indemnification was motivated in part by a beneficent regard for the interests of the Owners, that does not negate the evidence establishing that CUIC knowingly and deliberately placed its interests above those of Federal. Finally, as Federal notes, after it did become aware of the

antisubrogation rule and learned that it had benefitted from the rule's violation, CUIC was asked to contribute to the settlement but refused, essentially insisting on the advantage it had obtained from the successful realization of its plan.

Whether the plan was devised before or after the defense was split between law firms and claims handlers is irrelevant. CUIC's duty to Federal did not evaporate simply because separate counsel for each insured was obtained. Not surprisingly, CUIC cites nothing in support of its argument that its duty ran only to the Owners, and not to Federal, after the split. An "insurer does not satisfy its duty to defend merely by designating independent counsel to defend the litigation" (*Feliberty v Damon*, 72 NY2d 112, 117 [1988]). Likewise, its fiduciary duty to act in good faith toward both its insured and the excess carrier were not discharged upon the assignment of separate counsel. Finally, the mere fact that CUIC obtained separate counsel is hardly conclusive proof that it was acting selflessly. After all, the firm that initially represented both insureds could not bring a cross claim against one of its clients on behalf of the other.

Accordingly, I would affirm the Supreme Court's decision granting Federal's cross motion for summary judgment on its cause of action for bad faith. As there is no dispute that the appropriate measure of damages is $1 million, I assume, without deciding, that it is the amount to which Federal is entitled. **[Prior Case History: 2008 NY Slip Op 33349(U).]**