Century Prop. & Cas. Ins. Corp. v McManus & Richter (2024 NY Slip Op 00799)

Century Prop. & Cas. Ins. Corp. v McManus & Richter

2024 NY Slip Op 00799

Decided on February 15, 2024

Appellate Division, First Department

KAPNICK, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 15, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Anil C. Singh Peter H. Moulton Barbara R. Kapnick Saliann Scarpulla

Index No. 155054/20 Appeal No. 1136 Case No. 2022-05445 

[*1]Century Property and Casualty Insurance Corporation, Plaintiff-Appellant,
v
McManus & Richter, et al., Defendants-Respondents.

Plaintiff appeals from an order of Supreme Court, New York County (Shlomo S. Hagler, J.), entered on or about November 2, 2022, which granted defendants' motion to dismiss the amended complaint.

Lynch Daskal Emery LLP, New York, (Daniel Gagliardi of counsel) for appellant.
Lewis Brisbois Bisgaard & Smith LLP, New York (Jamie R. Wozman and Mark K. Anesh of counsel), for respondents.

KAPNICK, J. 

At issue in this appeal is whether plaintiff, a retrocessional insurer (i.e., the reinsurer of a reinsurer), may maintain a legal malpractice claim against defendants, the lawyers representing the insured in an underlying personal injury action. For the reasons that follow, we conclude that plaintiff, having paid out on the settlement on behalf of the insured in the underlying action, has standing to assert a claim for legal malpractice against defendants under the theory of equitable subrogation.
The instant action arises out of an underlying personal injury matter entitled Palaguachi v The Battery Park City Authority, New York County,index No. 157779/2015, in which defendants were retained by WFP Tower B, L.P. (Tower B) and its insurers, through their claims representatives, to represent Tower B and its affiliates.[FN1] In the underlying action, Ramon Palaguachi, an employee of Rite-Way Internal Removal, Inc. (Rite-Way), sustained injuries when he fell off an unsecured ladder while performing demolition work at a site owned by Tower B, which had contracted with Rite-Way to perform the demolition work. Palaguachi filed the underlying action against Tower B and its affiliates alleging they were vicariously liable for his injuries pursuant to Labor Law § 240 (1) as the owners and general contractors of the site.
According to the terms of its purchase order with Tower B, Rite-Way was obligated to maintain $6 million in insurance naming Tower B as an additional insured and to contractually indemnify Tower B for any losses it sustained as a result of Rite-Way's work. That contract also required Rite-Way's insurance policies to provide coverage prior to any other available insurance. However, instead of the $6 million in coverage contractually required by the purchase order, Rite-Way maintained only a $2 million policy subject to a $250,000 self-insured retention (SIR). Rite-Way and its insurers initially declined a tender offer to defend and indemnify Tower B, and defendants filed a third-party complaint against Rite-Way on behalf of Tower B asserting claims for, among other things, breach of contract for failure to procure the contractually required insurance, and for common-law and contractual indemnification and contribution. The underlying defendants moved for summary judgment in the third-party action, and while the motion was pending, Rite-Way and its primary insurer agreed to accept the defense of Tower B, but not its affiliates, and only to the extent of Rite-Way's $2 million policy after the remainder of the SIR was exhausted.[FN2]
On June 8, 2017, Palaguachi [*2]discontinued his claims against Tower B's affiliates, leaving Tower B as the sole defendant in the underlying action. On June 14, 2017, defendants withdrew the summary judgment motion pending in the third-party action "on consent." In a stipulation dated June 14, 2o17, and filed electronically on June 27, 2017, defendants discontinued the third-party action by Tower B against Rite-Way, allegedly without authorization from the insured (Tower B) or its insurers.[FN3]
Supreme Court ultimately rendered a finding of liability against Tower B in the underlying action upon a motion for summary judgment by Palaguachi, but before a trial on damages could take place, Tower B settled the action for $4.6 million. Once the defense costs were subtracted, Tower B was left with only approximately $1.8 million in coverage and still owed approximately $2.8 million toward the settlement. Plaintiff paid the $2.8 million on behalf of Tower B and later commenced the instant action asserting causes of action for legal malpractice against defendants as equitable and contractual subrogee of Tower B.[FN4]
As alleged in plaintiff's amended complaint, the claims against Tower B in the underlying action were covered by a $3 million primary insurance policy issued to Tower B by ACE American Insurance Company which was reinsured by ACE INA Overseas Insurance Company Limited (ACE INA). Plaintiff and ACE INA then entered into the retrocessional agreement, pursuant to which plaintiff accepted a 100% pro rata quota share reinsurance (retrocession) of ACE INA's interest and liabilities with respect to certain insurance policies, including the Tower B policy. Therefore, any loss under the Tower B policy was ultimately to fall upon plaintiff. According to plaintiff, as the retrocessional insurer for Tower B, it "was contractually obligated to fund" a portion of the settlement in the underlying action on Tower B's behalf. This contractual obligation forms the basis of plaintiff's instant claims of legal malpractice against defendants. In its amended complaint, plaintiff alleges that defendants were negligent in voluntarily withdrawing the motion and discontinuing the third-party action against Rite-Way; had they not done so, Tower B would have received complete indemnification from Rite-Way. Instead, because defendants withdrew the claims against Rite-Way, Tower B was left with exposure of approximately $2.8 million, which plaintiff ultimately paid.
Defendants moved pre-answer to dismiss the amended complaint pursuant to CPLR 3211 (a)(1) based on documentary evidence, primarily the various insurance policies and retrocessional agreement, and pursuant to CPLR 3211 (a)(7) for failure to state a claim. Defendants argued that plaintiff lacked standing to assert claims on behalf of Tower B, and could not assert direct claims for legal malpractice because it lacked privity or "near privity" with defendants. Defendants further argued that plaintiff's malpractice claim had to fail because the loss [*3]sustained by Tower B or its insurers was not caused by defendants' wrongdoing but rather was the fault of Tower B, and that the amended complaint failed to allege proximate causation. Supreme Court granted defendants' motion for lack of standing and dismissed the amended complaint, not reaching defendants' arguments related to plaintiff's alleged failure to plead proximate cause.
On a motion to dismiss a complaint for failure to state a cause of action pursuant to CPLR 3211 (a)(7), the complaint must be construed in the light most favorable to the plaintiff and all factual allegations must be accepted as true (see Leon v Martinez, 84 NY2d 83, 87 [1994]). To prevail on a CPLR 3211 (a)(1) motion, "the moving party must show that the documentary evidence conclusively refutes plaintiff's . . . allegations" (AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582, 590, 591 [2005]). Even accepting plaintiff's allegations as true, "New York courts impose a strict privity requirement to claims of legal malpractice; an attorney is not liable to a third party for negligence in performing services on behalf of his client" (Lavanant v General Acc. Ins. Co. of Am., 164 AD2d 73, 81 [1st Dept 1990], affd 79 NY2d 623 [1992]). Thus, absent an attorney-client relationship, a direct cause of action for legal malpractice typically cannot be stated. Plaintiff did not specifically plead a direct claim for legal malpractice against defendants, but asserts that its amended complaint contains facts sufficient to set forth such a claim. We disagree, and find that Supreme Court properly held that plaintiff lacks standing to assert a direct legal malpractice claim against defendants here, as plaintiff concedes it was not defendants' client and therefore not in strict privity with them (see Federal Ins. Co. v North Am. Specialty Ins. Co., 47 AD3d 52, 60 [1st Dept 2007]).
"[A]bsent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable for professional negligence to third parties not in privity" (Block v Brecher, Fishman, Feit, Heller, Rubin & Tannenbaum, 301 AD2d 400, 401 [1st Dept 2003], lv denied 100 NY2d 509 [2003]). However, in cases where the elements of negligent misrepresentation are present, a relationship of "near privity" may be sufficient to sustain a legal malpractice claim (see Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377, 382-385 [1992] [attorney may be held liable to third parties for submitting a false opinion letter upon which a third party relied]). In this case, Supreme Court correctly rejected plaintiff's argument that it had standing to assert a direct legal malpractice claim against defendants based on the doctrine of "near privity." To establish such a claim, the third party must allege "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; [*4]and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance" (id. at384; see also Federal Ins. Co., 47 AD3d at 61). Although this doctrine may allow a nonclient to sue for legal malpractice, plaintiff here was not in "near privity" with defendants, as it has not pleaded that it relied upon a negligent misrepresentation made by defendants.
A third party may still have standing to bring a claim for legal malpractice where, through contractual or equitable subrogation, it brings the claim on behalf of the attorney's client by stepping into their shoes legally (see Allianz Underwriters Ins. Co. v Landmark Ins. Co., 13 AD3d 172, 174 [1st Dept 2004]; Great Atl. Ins. Co. v Weinstein, 125 AD2d 214, 215 [1st Dept 1986]; Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co., 93 AD2d 337, 341 [1st Dept 1983], affd 61 NY2d 569 [1984]; see also Kumar v American Tr. Ins. Co., 49 AD3d 1353, 1355 [4th Dept 2008]). Plaintiff makes a persuasive argument that the decision of the motion court contradicts itself regarding plaintiff's claims based in contractual and equitable subrogation on behalf of Tower B. The motion court determined that plaintiff was not entitled to bring its claims based in equitable subrogation because the payment it made as retrocessionaire on behalf of Tower B was actually a payment by the primary insurer, ACE American. However, the motion court then simultaneously held that plaintiff was not entitled to contractual subrogation because, despite the formal assignment by ACE American to plaintiff of its rights to all claims that it had against defendants arising from their representation of Tower B in the underlying Palaguachi action, ACE American did not actually have any claims to assign because it never made a payment. Clearly these positions are mutually exclusive.
As an equitable doctrine, subrogation is "designed to promote justice, and thus, is dependent upon the particular relationship of the parties and the nature of the controversy in each case" (Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp., 64 AD3d 85, 106 [2d Dept 2009], lv dismissed 13 NY3d 900 [2009], citing Matter of Costello v Geiser, 85 NY2d 103, 109 [1995]). The doctrine of equitable subrogation "is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability" (Gerseta Corp. v Equitable Trust Co. of NY, 241 NY 418, 425-426 [1926]).
In New York, "[w]e recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages and the [*5]principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries" (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, 47 [1925]). "As an equitable doctrine in the context of insurance, an insurance carrier, upon payment of a loss becomes subrogated to the rights and remedies of its assured to proceed against a party primarily liable without the necessity of any formal assignment or stipulation" (J & B Schoenfeld, Fur Merchants v Albany Ins. Co., 109 AD2d 370, 373 [1st Dept 1985]). Under the same equitable principles, "an insurer which has been compelled under its policy to pay a loss, ought in fairness to be reimbursed by the party which caused the loss" (Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d 366, 372 [1990]).
This Court has repeatedly recognized that an excess insurer may seek relief against an insured's attorney for malpractice as equitable subrogee of the insured (see e.g., Federal Ins. Co., 47 AD3d at 58; Allianz Underwriters Ins. Co., 13 AD3d at 174-175; Great Atl. Ins. Co., 125 AD2d at 216; Hartford Acc. & Indem. Co., 93 AD2d at 342). However, we have not had an opportunity to address whether a reinsurer, or retrocessionaire, may assert a legal malpractice claim on behalf of the insured. Traditional reinsurance is a contract between two insurance companies in which the reinsured company agrees to "cede" all or part of its risk to the reinsurer in return for a percentage of the premium and/or a fee (see Unigard Sec. Ins. Co. v North Riv. Ins. Co., 79 NY2d 576, 582 [1992]). Unlike most common excess insurance policies, reinsurance operates solely between the reinsurer and the ceding company and not with the insured (id.). Here, ACE American ceded the entire risk on the Tower B policy to ACE INA, and ACE INA ceded the entire risk on the Tower B policy to plaintiff. While not in privity with the insured, a reinsurer is still an insurer required to ultimately pay on the insured's behalf. Plaintiff had a specific contractual obligation to pay, and did pay, the lion's share of the settlement in the underlying action.
Recently, in Innovative Risk Mgt., Inc. v Morris Duffy Alonso & Faley (204 AD3d 518 [1st Dept 2022]),this Court found that plaintiff, the third-party administrator for the primary insurer, lacked standing to pursue a legal malpractice claim as equitable subrogee "because it did not insure the insureds; more specifically, the complaint [did] not allege, and the evidence [did] not show, that plaintiff had a contractual obligation to pay the claims in the underlying action" (id. at 518-519). In this case however, plaintiff specifically alleged that it was contractually obligated to pay, and did in fact pay, the remaining amount of the settlement on behalf of Tower B as retrocessionaire to Tower B's primary insurer's reinsurer, thus distinguishing the facts here from the facts in Innovative, where the plaintiff was a third-party administrator and not an insurer [*6]or reinsurer obligated to make a payment on behalf of the insured.
Defendants and the motion court relied heavily upon Reliance Ins. Co. v Aerodyne Engrs. (204 AD2d 944 [3d Dept 1994]) for the premise that a "[reinsurer] ha[s] no contractual obligation to [the insured] and thus no subrogation rights" (id. at 345). While we are not bound to follow the law of our sister departments, it is important to address why we do not do so in this case. The Third Department specifically stated in Reliance,"the fact that a reinsurer pays a claim on behalf of the insured does not alter the relationships between the parties" and "[i]n such case the reinsurer is only the vehicle used by the insurer to pay the claim against its original policy" (id. at 944-945). Both of these statements are derived from a Kings County, Supreme Court decision from 1971, National Ins. & Guar. Corp. v Vander Veer, 66 Misc 2d 862, 866 [Sup Ct, Kings County 1971] a decision that has nothing to do with subrogation but rather dealt with whether a specific reinsurance agreement with unauthorized foreign insurers was valid and enforceable under the Insurance Law, and whether a trust fund was established. Thus, we find that the conclusion in Reliance that a reinsurer has no subrogation rights regarding the insured because no privity exits between the reinsurer and the insured lacks support and goes against long established New York law that "[t]he right of subrogation is founded upon principles of equity and not in contract" and "does not depend upon privity" (Catskill Natl. Bank v Dumary, 206 NY 550, 559 [1912]).
Subsequent to Reliance, federal courts applying New York law have found that reinsurers may recover their payments from the tortfeasors that actually caused the losses under the principle of equitable subrogation, even if there was no privity between the reinsurers and the insureds. In In re Terrorist Attacks of September 11, 2001 (2018 WL 3323159, 2023 US Dist LEXIS 141957 [SD NY, June 25, 2018, 03 MDL 1570 (GBD) (SN)]), the United States District Court for the Southern District of New York, applying New York law, rejected the contention that under the doctrine of equitable subrogation the reinsurers could not recover payments made from the party legally responsible for the loss, stating that "because equitable subrogation is a doctrine founded in equity and not in contract, it is long established under New York law that privity is not required" (id. at *2, quoting Nobel Ins. Co. v City of New York, 2008 WL 4185738, 2008 US Dist LEXIS 69302 [SD NY, Sept. 3, 2008, No. 00 Civ 1328(RIS)]; see also Lord Day & Lord v Socialist Republic of Vietnam, 134 F Supp 2d 549, 563 n12 [SD NY 2001]["Although no privity existed between the Reinsurers and Vietnam, preventing an express contractual recovery under the reinsurance contract, an equitable claim for reimbursement or 'legal' subrogation directly against Vietnam also accrued in favor of the Reinsurers"] [internal citations omitted]). This [*7]appears to be a more logical and sound analysis of the "equitable" doctrine of equitable subrogation.
Where a reinsurer, or retrocessionaire, has paid a claim on behalf of an insured, equitable principles demand that the reinsurer be entitled to equitable subrogation on behalf of the insured. Having pleaded that it was contractually obligated to, and did, pay the majority of Tower B's settlement amount in the underlying personal injury action, and that it brings the instant action for legal malpractice as subrogee of Tower B, plaintiff can proceed with this action under the theory of equitable subrogation.
Any rights plaintiff has as equitable subrogee accrued to it independently of any contractual provision upon payment of the loss under the Tower B policy. Therefore, "if we hold that plaintiff may properly make a claim as . . . equitable subrogee, as we do, it becomes unnecessary to determine whether plaintiff also has a valid claim as contractual subrogee. . . ." (see Federal Ins. Co., 75 NY2d at 371).
As to defendants' arguments that plaintiff failed to state a claim pursuant to CPLR 3211 (a)(7), a complaint for legal malpractice must allege the negligence of the attorney, that the negligence was a proximate cause of the loss sustained, and actual damages (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]). Here, plaintiff sufficiently pleaded that the alleged malpractice was the proximate cause of the loss it suffered in having to pay almost $2.8 million on behalf of Tower B towards the settlement in the underlying action. Plaintiff set forth facts sufficient to show the potential merit of the third-party complaint in the underlying action, and defendants' allegedly negligent and unauthorized discontinuance of that action (see Fletcher v Boies, Schiller & Flexner, LLP, 75 AD3d 469, 469 [1st Dept 2010]).
Accordingly, the order of Supreme Court, New York County (Shlomo S. Hagler, J.), entered on or about November 2, 2022, which granted defendants' motion to dismiss the amended complaint, should be modified, on the law, to deny the motion insofar as the amended complaint is based on claims sounding in equitable subrogation, and otherwise affirmed, without costs.
Order, Supreme Court, New York County (Shlomo S. Hagler, J.), entered on or about November 2, 2022, modified, on the law, to deny the motion insofar as the amended complaint is based on claims sounding in equitable subrogation, and otherwise affirmed, without costs.
Opinion by Kapnick, J., All concur.
Webber, J.P., Singh, Moulton, Kapnick, Scarpulla, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 15, 2024

Footnotes

Footnote 1: Plaintiff hired IBNI Insurance Services Limited to act as claims administrator for its insurance portfolio, ultimately including the Palaguachi action. IBNI subcontracted the work to York Risk Services Group, Inc. and retained defendant attorneys to represent Tower B in the Palaguachi matter.

Footnote 2: Rite-Way's excess insurer carrier informed defendants that its policy would not apply until Tower B's own primary insurance was exhausted.

Footnote 3: Also filed electronically on June 27, 2017 was a "Consent to Change of Counsel" dated June 12, 2017, substituting nonparty Gottlieb Siegel & Schwartz LLP as attorneys for Tower B in the place and stead of defendants.

Footnote 4: Plaintiff alleged only two causes of action in its amended complaint, "Subrogation — Legal Malpractice" against all defendants and "Subrogation — Respondeat Superior" against the defendant firm for the actions of defendant attorney Christopher D. Skoczen.