CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff, *v.* ROYAL INDEMNITY COMPANY, Defendant and Third-Party Plaintiff-Respondent; ALLIS-CHALMERS CORPORATION, Third-Party Defendant, and WESTINGHOUSE ELECTRIC COMPANY, Third-Party Defendant-Appellant.

First Department, February 22, 1973.

*Philip D. Pakula* of counsel (*Michael S. Belohlavek* with him on the brief; *Townley, Updike, Carter & Rodgers,* attorneys), for third-party defendant-appellant.

*John M. Hadlock* of counsel (*Herbert P. Polk* with him on the brief; *Whitman & Ransom,* attorneys), for defendant and third-party plaintiff-respondent.

Stevens, P. J. Plaintiff, Consolidated Edison Company of New York, Inc. (Con Ed) and Royal Indemnity Company (Royal) sue on an insurance contract to recover $3,200,000 for loss or damages as a result of a breakdown of its Ravenswood Unit 3 (Big Allis). Royal, by its third-party complaint, impleads Allis-Chalmers Corporation (Allis) which designed and installed Big Allis, and Westinghouse Electric Company (Westinghouse) which repaired Big Allis.

The insurance policy contained the following provision: " In the event of any payment under this policy, the Company shall be subrogated to the Insured's rights of recovery therefor against any person or organization."

Westinghouse moved to dismiss the third-party complaint, asserting that the language above quoted precluded Royal from presently asserting subrogation rights against it. It is from a denial of its motion that Westinghouse appeals.

Essentially the question to be resolved is whether the quoted language precludes action by Royal prior to payment to the assured. In our view it does not.

CPLR 1007 provides, in part, " after the service of his answer, a defendant may proceed against a person not a party who is *or may be* liable to him for all or part of the plaintiff's claim against him, by serving upon such person a summons and third-party complaint and all prior pleadings served in the action " (emphasis supplied). This right of impleader exists where the acts or omissions of a third party have exposed the defendant to liability to the plaintiff.

The court is empowered to dismiss without prejudice or order a separate trial of a third-party complaint, or to make such order as may be just. " In exercising its discretion, the court shall consider whether the controversy between the third-party plaintiff and the third-party defendant will unduly delay the determination of the main action or prejudice the substantial rights of

any party '' (CPLR 1010). There is no claim here of prejudice or delay. Nor did the plaintiff in this case voice any objection to the third-party complaint.

It is clear that there is no statutory bar to the third-party action. The question remains whether the *Ross* and *Krause* cases (*Ross* v. *Pawtucket Mut. Ins. Co.*, 13 N Y 2d 233; *Krause* v. *American Guar. & Liab. Ins. Co.*, 27 A D 2d 353, affd. 22 N Y 2d 147) relied upon in the dissenting opinion dictate a conclusion contrary to that reached by us.

In *Ross* (*supra*, p. 234), the question was '' whether an insurer, upon being sued by its insured upon the policy, may implead in a negligence action the alleged tort-feasors.'' The policy there provided that the defendant insurer would be subrogated to the insured's rights '' in the event that any payment for any collision loss is made '' (p. 235). Admittedly, the provision is similar to that in the case now before us. The court concluded, since the insurer had not made any payments under the policy, that the third-party action could not be maintained. Obviously to have permitted impleader in *Ross* would have frustrated the purpose of automobile insurance. Impleader in this case where the action is upon a boiler and machinery policy certainly would not frustrate the statutory objective.

Indeed, in the *Krause* case (*supra*), an action on a broker's bond, where there was no such provision in the policy, this seems to have been a part of the rationale underlying the decision. The Court of Appeals stated that in *Ross* the decision involved a covenant but noted (p. 156) that *Ross* '' also rests on the broader ground that impleader should not be allowed to an insurer whose claim is based upon rights to be gained by subrogation, and, as has already been indicated, *we do not accept this approach* '' (emphasis supplied). The court (per KEATING, J.) observed that *Ross* was an automobile collision case and used this significant language. '' Automobile collision cases are numerous and involve minor claims, and the very purpose of collision insurance is to permit the insured to collect his damages promptly and use the funds to repair his car. Consequently, as a matter of judicial discretion, impleader can properly be denied in such cases in order to reduce court congestion and to assure that the prime object of the collision policy is not frustrated by the judicial process '' (p. 156). It continued (p. 157), '' the primary purpose of a broker's bond is not quick payment of small losses, but protection from ruinous losses * * * permitting impleader here will not frustrate the main purpose for which the policy was purchased ''. The

last quotation is particularly apt with respect to the present appeal. (See, also, 20 Syracuse L. Rev., Civil Practice 474, 475.) Over three million dollars is involved in the impleaded claims.

As a matter of justice and equity impleading should be permitted here. Otherwise, the subrogation claim of Royal might become time-barred. '' Logically, there is no difference in terms of maturity of an action based on subrogation, as opposed to indemnity, because in either situation the cause of action only accrues upon payment or the determination of liability. Moreover, a subrogee has as strong an interest in protecting its claim over as does an indemnitor '' (*Krause, supra,* p. 153).

The covenant in the policy was for the benefit of the assured. If the assured raises no objection, a third party which possibly caused the loss should not be allowed to benefit by its terms, and thereby successfully insulate itself from liability for its acts.

The statute contemplates the avoidance of multiplicity of actions. Since the courts have a right to control their calendars, and, under the statute, may in a proper case exercise their discretion as warranted, the court properly exercised its powers. The order appealed from should be affirmed, with costs.

STEUER, J. (concurring). I concur upon the last stated ground, namely, that the covenant, limiting subrogation until after payment has been made by the insurer, inures to the benefit of the insured only. It should be noted that although there was such a covenant in *Ross* (13 N Y 2d 233) it was not the basis of the Court of Appeals decision. There was no covenant in *Krause* (27 A D 2d 353, affd. 22 N Y 2d 147) and this court distinguished *Krause* from *Ross* on that ground. The Court of Appeals through Judge KEATING approved of the distinction, rejecting its former approach in *Ross*. However, the posture of both cases precluded raising the question of whether the covenant inures to the benefit of the tort-feasor defendant, absent any protest from the insured. In *Krause,* however, there were two causes on appeal, in one of which the insured objected to the third-party action based on subrogation and in the other of which he did not. The dissenters agreed with the majority in the instance in which the insured did not object. This is some indication that had there been a covenant its restrictive effect would have been limited to instances where the insured sought to enforce it.

McGIVERN, J. (dissenting). I disagree. Coming back to fundamentals, the policy provided, as in the *Ross* case (13 N Y 2d 233; 235) '' *In the event* [*of*] *any payment* '' (emphasis supplied), then the insurer may be subrogated to the rights of the

insured. But the insured contracted with the Royal Indemnity Company, and paid a vast premium ($524,724) for restoration in the event of loss. The insurance company accepted the risk. It should now pay. Instead of promptly paying the insured, the insurance company now wants the right of subrogation over against the alleged tort-feasor; incidentally, tieing up the insured in a maze of collateral motions, examinations, interlocutory appeals, interminable delays, and inevitably, additional expenses, all of which the insured did not bargain for. It could have taken its chances, dispensed with the insurance, and then sued the tort-feasor itself.

And there is nothing in the foregoing rationale that is not consonant with *Krause* v. *American Guar. & Liab. Ins. Co.* (22 N Y 2d 147). Indeed, it is countenanced in the Court of Appeals opinion (p. 156): "It is true, as the Appellate Division noted, that the parties to an insurance contract can covenant that the insurer shall have no right to sue the third party until the insurer's liability has been established or the claim paid in part or in full." And here, unlike in the *Krause* case, we have such a precise covenant. And it is a covenant which has found favor with the Court of Appeals. "Therefore, in this connection, the Appellate Division's analysis of *Ross* would seem correct * * * on its facts *Ross* is clearly correct." (*Krause, supra,* p. 156.)

NUNEZ and MURPHY, JJ., concur with STEVENS, P. J.; STEUER, J., concurs in an opinion; McGIVERN, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on August 22, 1972, affirmed. Respondent shall recover from appellant $60 costs and disbursements of this appeal.