J & B SCHOENFELD, FUR MERCHANTS, INC., Appellant, v ALBANY INSURANCE COMPANY et al., Respondents. (And a Third-Party Action).

First Department, July 18, 1985

### APPEARANCES OF COUNSEL

*C. Raymond Nelson* of counsel (*Jeffrey Sunshine* and *Sylvain R. Jakabovics* with him on the brief; *Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey,* attorneys), for appellant.

*Frederic R. Mindlin* of counsel (*Herbert P. Polk* with him on the brief; *Whitman & Ransom,* attorneys), for respondents.

### OPINION OF THE COURT

ELLERIN, J.

These consolidated appeals stem from a controversy arising out of a property damage claim under a policy of insurance with

particular focus on the parameters of the subrogation rights incident thereto.

The plaintiff J & B Schoenfeld, Fur Merchants, Inc. (Schoenfeld), a dealer in raw fur skins, is the insured under an all-risks property insurance policy issued by Albany Insurance Co. (Albany) which provides for payment for loss or damage to sold merchandise "on the basis of the Assured's net selling price".

On June 22, 1982, various bales of bobcat and mink skins, stored in the basement of plaintiff's premises, sustained extensive water damage as a result of a water pipe break in the course of renovation work being performed on the premises by Bourbon Construction Corp. (Bourbon). Bourbon subsequently acknowledged responsibility for the rupture of the pipe. At the time the damage occurred, the bales of skins had already been sold to a third party for the total sum of $215,000 of which $95,000 represented the price for the bobcat skins and $120,000 the price for the mink skins. The purchaser examined the skins after the occurrence and refused to accept delivery because of the damage.

Shortly after notification of the loss, the insurer Albany acknowledged its liability under the policy and its independently retained adjusters and appraisers entered into negotiations with plaintiff for purposes of settling the claim. The bobcat and mink skins were treated separately for settlement purposes, with early agreement by the insurer that the bobcat skins, which had already begun to deteriorate, would be paid for on the basis of the full selling price of $95,000. Payment of that amount was conditioned upon execution by plaintiff of a separate proof of loss with respect to the bobcat skins and a salvage removal agreement in Albany's favor as to those skins. While plaintiff did execute both such documents relative to the bobcat skins, negotiations with respect to the mink skins took an acrimonious turn with the amount payable on such loss being sharply disputed, plaintiff claiming that defendant sought to pay only $12,000, or 10% instead of the entire net selling price, for the damage to those skins. It was in that setting that plaintiff Schoenfeld instituted action No. 1 in August 1981 against Albany and its various representatives and agents. At about the same time, Schoenfeld also commenced an action (action No. 2) directly against both Bourbon, the contractor, and the landlord of the premises charging them with tort responsibility for the damage to the skins.

In September, Albany remitted its draft for $95,000 to plaintiff to cover the bobcat loss but, before payment was made thereon, it learned of the separate tort action which Schoenfeld

had instituted against Bourbon and the landlord. It thereupon advised Schoenfeld that the payment of the $95,000 was conditioned upon either a discontinuance of the tort action or a substitution of Albany in place and stead of Schoenfeld in such action. Upon Schoenfeld's refusal to comply, the $95,000 draft was dishonored.

The complaint in action No. 1 against Albany and its agents asserts three causes of action. The first cause of action, which is the subject of appeal No. 22914, seeks a recovery in the sum of $215,000 on the insurance contract. In its answer, defendant Albany interposed an affirmative defense to such cause of action alleging that plaintiff had arrogated and prejudiced Albany's subrogation rights by maintaining a separate independent action against the tort-feasors, that such action constituted an election by plaintiff to pursue the third parties rather than defendant and that defendants were thereby relieved of any liability to plaintiff. Thereafter, Albany moved for summary judgment dismissing plaintiff's first cause of action on such ground or, in the alternative, for an order directing plaintiff to discontinue its independent action against the tort-feasors. (In its moving papers Albany stated that it was contemporaneously taking the steps necessary to implead Bourbon, as a third-party defendant, in the main action — i.e., action No. 1.) Plaintiff cross-moved for summary judgment on its first cause of action.

In its decision, dated May 24, 1983, the court below (Greenfield, J.), granted summary judgment to plaintiff with respect to Albany's liability under the policy, with damages to be determined at an assessment, "upon condition that within 10 days from service of the order herein, it [plaintiff] provides to defendant an assignment of its causes of action against Bourbon Construction Corp.". No such assignment was executed by plaintiff and in an order entered on October 5, 1983 the court denied plaintiff's further motion to stay implementation of the condition and for reconsideration.

In essence, the court below determined that the insurer's acknowledgment of liability, albeit disputing the amount thereof, entitled it to be immediately subrogated to all of plaintiff's rights against the tort-feasor and it made an assignment of such rights by the plaintiff a condition precedent to recovery of payment under the policy. In so doing it erred. The condition imposed is contrary to the express provisions of the policy itself and is at variance with the controlling principles of the law of subrogation.

In general, the right to subrogation arises *upon payment to the subrogor* and may be created by contract or by operation of law.

As an equitable doctrine in the context of insurance, an insurance carrier, *upon payment of a loss* becomes subrogated to the rights and remedies of its assured to proceed against a party primarily liable without the necessity of any formal assignment or stipulation. *The right is coextensive with the amount of indemnity paid to the insured. (See, New York Bd. of Underwriters v Trans Urban Constr. Co.,* 91 AD2d 115 [Kassal, J.].)

While the right of subrogation is not dependent on contract but arises by operation of law *when payment* has been made, where the right of an insurer to subrogation is expressly provided for in the policy, its rights must be governed by the terms of the policy. (*See,* 16 Couch, Insurance 2d §§ 61:20, 61:23.)

In the instant case the policy expressly provides as follows:

"23. *SUBROGATION*

"The Company *may require* from the Assured an assignment of all rights of recovery against any party for loss or damage *to the extent that payment therefore* [*sic*] *is made by the Company.*" (Emphasis added.)

It is clear that "payment" to the insured is the *sine qua non* of the insurer's right of subrogation whether by operation of law or, as is here the case, by the express terms of the contract of insurance.

In seeking to sustain the conclusion by the court below that a concession of liability, without more, warrants an assignment to the insurer of the insured's rights against the alleged tort-feasor, defendants rely upon the decisions in *Krause v American Guar. & Liab. Ins. Co.* (22 NY2d 147) and *Consolidated Edison Co. v Royal Indem. Co.* (41 AD2d 37) as authority for what is denominated a doctrine of "anticipatory subrogation". These decisions in no way support the position urged by defendants. Both of those cases deal with the question of whether an insurer who is sued on its policy can implead into that action, as a third-party defendant, the alleged tort-feasor as one "who is or may be liable to him" pursuant to CPLR 1007.

While concluding that the language of CPLR 1007 is broad enough to encompass contingent claims based on subrogation, the court in *Krause* (*supra*) expressly noted that permitting such impleader would not interfere with the insured's own rights against the alleged tort-feasor. It specifically stated that: "The insured is free to press on with its claim or, if no payment has been made by the insurer, settle, as the insured desires" (*supra,* at p 154). Thus, contrary to Albany's assertions, the commencement by plaintiff of its own action against Bourbon cannot be

construed as an impairment of Albany's ultimate rights of recovery.

In the instant case the alleged tort-feasor has already been impleaded as a third-party defendant by Albany without objection by the plaintiff. That, however, is the extent of the subrogation rights that defendant may exercise prior to making payment to plaintiff on the claim in issue. A concession of liability is not the "payment" required by the terms of the policy which controls here, nor would it constitute the payment necessary to give rise to the right of subrogation by operation of law.

Accordingly, summary judgment without any condition should have been granted in favor of plaintiff on the issue of liability and there being no dispute with respect to the amount of the payment for the bobcat skins, partial judgment in the sum of $95,000 should have been entered. As to the mink skins, however, an assessment on the issue of damages was indicated.

Upon plaintiff's failure to fulfill the condition which had been imposed by the court below in the aforementioned order, defendant again moved for summary judgment, this time seeking dismissal of the entire complaint. Defendant's motion to dismiss was granted as to each of plaintiff's three causes of action in a decision dated October 3, 1984 (Ascione, J.), before us as appeal No. 22915. In dismissing the first cause of action for recovery on the insurance policy, the court concluded that it was bound to follow Judge Greenfield's prior order, which included the condition requiring plaintiff to execute an assignment, as the law of the case and that since plaintiff had not complied, a dismissal was mandated. Since we have deleted such condition from the prior order, as improper, and are directing summary judgment thereon in plaintiff's favor, the order of November 8, 1984 must also be modified accordingly. With respect to the dismissal of the second and third causes of action, however, we affirm. Judge Ascione properly found that the second cause of action sounding in fraud was, in fact, part of the breach of contract action and that the third cause of action predicated upon a violation of Insurance Law § 40-d was fatally deficient because redress under that statute by way of an action for damages is not available to an individual litigant.

The final order which is before us, as appeal No. 22916, was entered on October 9, 1984 (Ascione, J.), denying plaintiff's motion for consolidation of its independent tort action against Bourbon et al. (action No. 2) with its action on the policy (action No. 1). Since the court below had contemporaneously granted summary judgment dismissing the complaint in the latter ac-

tion, the motion to consolidate was denied on the ground that there was no action to consolidate with. In view of our modification and the reinstatement of the first cause of action, circumstances now exist which militate in favor of granting the motion to consolidate, thereby permitting the matter to proceed in a more orderly and convenient posture.

Order, Supreme Court, New York County (Greenfield, J.), entered October 5, 1983, denying plaintiff's motion to stay implementation of and for reconsideration of an order, Supreme Court, New York County (Greenfield, J.), entered May 25, 1983, to the extent that it granted plaintiff summary judgment on its first cause of action in action No. 1 as to liability on condition that it provide defendant an assignment of its causes of action against Bourbon Construction Co. should be unanimously reversed, on the law, and reconsideration granted, and, upon reconsideration, the order entered May 25, 1983, should be modified, on the law, to strike the condition, to grant plaintiff partial summary judgment on its first cause of action in the amount of $95,000 on its claim for damage to bobcat skins and to remand for an assessment of damages on its claim for damage to mink skins, to be held within 30 days from the date of this order, and otherwise affirmed.

Order, Supreme Court, New York County (Ascione, J.), entered November 8, 1984, which, *inter alia,* granted defendant's motion to dismiss each of plaintiff's causes of action in action No. 1 should be unanimously modified, on the law, to reinstate plaintiff's first cause of action, and otherwise affirmed.

Order, Supreme Court, New York County (Ascione, J.), entered October 9, 1984 which denied as moot plaintiff's motion to consolidate these two actions should be unanimously reversed, on the law and the facts, and in the exercise of discretion, and consolidation granted, with one bill of costs to cover all three appeals, and with disbursements.

MURPHY, P. J., SULLIVAN, CARRO and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on October 5, 1983, unanimously reversed, on the law, and reconsideration granted, and, upon reconsideration, the order of said court entered on May 25, 1983, unanimously modified, on the law, to strike the condition, to grant plaintiff partial summary judgment on its first cause of action in the amount of $95,000 on its claim for damage to bobcat skins and to remand for an assessment of damages on its claim for damage to mink skins, to be held within 30 days from the date of this court's order and otherwise affirmed; and order of said court, entered on October

9, 1984, unanimously reversed, on the law and the facts, and in the exercise of discretion, and consolidation granted; and order of said court, entered on November 8, 1984, unanimously modified, on the law, to reinstate plaintiff's first cause of action, and otherwise affirmed. Appellant shall recover of respondents one bill of $75 costs and disbursements of these appeals.