In re SEPTEMBER 11 LITIGATION.

World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC and 4 World Trade. Center LLC, Plaintiffs,

v.

Certain Underwriters at Lloyd's, London Syndicates Numbered 1212, 79 and 2791, QBE Insurance (Europe) Ltd. f/k/a QBE International Insurance Ltd. and Industrial Risk Insurers, Defendants.

Nos. 21 MC 101(AKH), 10 Civ. 1642.

United States District Court,
S.D. New York.

Nov. 27, 2012.

Derek Todd Smith, Zafer Adem Akin, Akin & Smith, LLC, Dale Christian Christensen, Jr., Seward & Kissel LLP, Douglas J. Pepe, Gregory P. Joseph Law Offices LLC, David Jaroslawicz, Jaroslawicz & Jaros, LLC, Robert Joseph Tolchin, Robert J. Tolchin, Esq., David John Przygoda, Ropes & Gray, LLP, Frank H. Granito, III, Speiser, Krause, Nolan and Granito, Bruce M. Friedman, Paul Fredric Kovner, Rubin, Fiorella & Friedman, L.L.P., Charles Edward Joseph, Joseph, Herzfeld, Hester, & Kirschenbaum, Christopher Bruce Hitchcock, Hitchcock & Cummings LLC, Philip L. Guarino, Phillips Nizer LLP, Jay B. Spievack, Cohen Tauber Spievack & Wagner, P.C., Anthony Labozzetta, Anthony Labozzetta Esq.,

Gregory P. Joseph, Gregory P. Joseph Law Office LLC, Kymberly Kochis, Nelson Levine De Luca & Hamilton, Stephen Mortimer Marcusa, Bigham, Englar, Jones & Houston, Marina A. Spinner, Frank M. Nicoletti, Nicoletti, Gonson, Spinner & Owen, LLP, Mark Leigh Antin, Stanley Walter Kallmann, Gennet, Kallmann, Antin & Robinson, P.C., Alexander Fellows Powell, Andrew John Scholz, Jason Todd Cohen, Richard Arthur Williamson, Thomas A. Egan, Flemming, Zulack, Williamson, Zauderer, LLP, Sari E. Kolatch, Cohen, Tauber, Spievack & Wagner, P.C., New York, NY, Jemi Goulian Lucey, Jane J. Felton, Greenbaum, Rowe, Smith & Davis LLP, Iselin, NJ, Jennifer E. Shafer, Kristopher E. Kuehn, James M. Warden, Walden Triplett Grier, Overland Park, KS, Kenneth W. Erickson, Matthew M. Burke, Robert A. Skinner, Ropes & Gray LLP, Boston, MA, Robert J. Bates, Robert J. Bates, Esq., Westwood, NJ, Michael Sukhman, Frenkel Sukhman, LLP, White Plains, NY, Thaniel James Beinert, The Law Office of Thaniel J. Beinert and Associates, Brooklyn, NY, Carol M. Rooney, Paul B. Butler, Scott S. Katz, Butler, Pappas, Weihmuller, Katz, Craig, LLP, Tampa, FL, Kimberly M. Collins, Robert A. Clifford, Timothy S. Tomasik, Clifford Law Offices, P.C., Robert J. Bates, Bates & Carey, LLP, Chicago, IL, Catherine M. Colinvaux, Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P., Waltham, MA, H. Jerome Gette, M. Anthony Parsons, II, Steven J. Badger, John B. Massopust, Zelle, Hofmann, Voelbel & Gette, Dallas, TX, James S. Reece, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, Minneapolis, MN, Michael Joseph Kuckelman, Pleasantville, NY, Franklin Michael Sachs, Greenbaum, Rowe, Smith & Davis LLP, Woodbridge, NJ, Jennifer L. Beidel, John. F. Stoviak, Shiloh D. Theberge, Timothy W. Callahan, II, Patrick M. Hromisin, Saul Ewing LLP, Philadelphia, PA, Mary F. Schiavo, Vin-

cent Ian Parrett, Motley Rice LLC, Mount Pleasant, SC, for Plaintiffs.

Desmond Thomas Barry, Jr., Condon and Forsyth LLP, James Patrick Connors, Jones Hirsch Connors & Bull P.C., Peter James Gallagher, Kennedy Johnson Gallagher, LLC, Derek Adam McNally, Johnson, Gallagher Magliery LLC, Jacqueline Keller, Rubin, Fiorella & Friedman, L.L.P., Kevin J. O'Neill, Gogick, Byrne & O'Neill, L.L.P., John J. McDonough, Cozen O'Connor, Timothy Joseph Keane, Anoushka Sharifi Bayley, Brian Patrick Sexton, Jeffrey J. Ellis, Loretta Anne Redmond, Quirk and Bakalor, P.C., Willard Mark Wood, John L. Altieri, Jr., O'Melveny & Myers LLP, Beth D. Jacob, Paul Andrew Scrudato, Donald Allen Klein, Schiff Hardin LLP, Megan Lee, Offices of Milton H. Pachter, Timothy Gerard Stickelman, The Port Authority of New York and New Jersey, H. Christopher Boehning, Robert A. Atkins, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Katherine Lindsay Pringle, Eric Jonathan Seiler, Heather Jo Windt, Friedman, Kaplan, Seiler & Adelman, LLP, Christopher P. Moore, Cleary, Gottlieb, Steen & Hamilton, LLP, Melissa Tabako Billig, Robert Alan Banner, Ingram, Yuzek, Gainen, Carroll & Bertolotti, LLP, Stephen Paul Schreckinger, Gogick, Byrne & O'Neil, LLP, David Moore Lindsey, Chaffetz Lindsey LLP, James Milton Hosking, Clifford Chance US, LLP, Daniel John McNamara, DeCicco, Gibbons & McNamara, P.C., Carol A. Sigmond, Dunnington, Bartholow & Miller, LLP, Kenneth George Schwarz, Fischbein, Badillo, Wagner & Harding, Michael Thomas Rogers, Vashali Maria Aggarwal, Wasserman, Grubin & Rogers, LLP, Chad Everette Sjoquist, Zetlin & De Chiara, LLP, Thomas V. Giordano, Zeynel Karcioglu, Esq., Mark Joseph Weber, Mound, Cotton, Wollan & Greengrass, New York, NY, T. Patrick Byrnes, Locke Lord LLP, Adam Randall Sorkin, Shiff Hardin LLP, Chicago, IL, Johnathan Jeffrey Ross, Susman Godfrey LLP, Houston, TX, Bruce Richard Wildermuth, Alexis M. Dougherty, Edward James McMurrer, Ralph Vincent Pagano, Mendes & Mount, LLP, Newark, NJ, Kimberly A. Donlon, Kimberly A. Donlon, Attorney At Law, Beverly, MA, Johnathan Jeffrey Ross, H. Lee Godfrey, Laurie Gallun, Max Tribble, Susman Godfrey LLP, Houston, TX, Edwin W. Green, Ed Green Attorney at Law, Breckenridge, CO, Dennis M. O'Hara, Jason A. Glusman, Robert C. Bauroth, Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Ft. Lauderdale, FL, Jeffrey W. Moryan, Connell Foley LLP, Roseland, NJ, Kathleen Marie Guilfoyle, Kurt Bernard Gerstner, Richard Paul Campbell, Campbell Campbell Edwards & Conroy, Boston, MA, Sarah D. Youngblood, Schiff Hardin LLP, San Francisco, CA, Leah Ward Sears, Schiff Hardin LLP, Atlanta, GA, Mack H. Shultz, Jr., Steven C. Minson, Thomas Jeffrey McLaughlin, Todd W. Rosencrans, Perkins Coie LLP, Seattle, WA, David A. Harrison, Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L., Omaha, NE, Anita B. Weinstein, Cozen O'Connor, Philadelphia, PA, Daniel W. Morrison, III, Michael P. Benenati, Bleakley Platt & Schmidt, LLP, White Plains, NY, for Defendants.

## ORDER AND OPINION DENYING MOTIONS FOR SUMMARY JUDGMENT: RECOVERABLE TORT DAMAGES MUST EXCEED INSURANCE RECOVERY, AND COMPARISONS PRESENT ISSUES OF FACT TO BE TRIED

ALVIN K. HELLERSTEIN, District Judge.

## I. INTRODUCTION

After the terrorist-related aircraft crashes of September 11, 2001 destroyed

the World Trade Center buildings to which Plaintiffs held leasehold interests, Defendants made insurance payments to Plaintiffs, becoming subrogated to Plaintiffs' claims. Defendants then brought subrogation claims against the various alleged tortfeasors ("Aviation Defendants"), which were settled by Aviation Defendants making payments to Defendants. Plaintiffs claim priority with respect to certain of these payments and seek a declaratory judgment pursuant to 28 U.S.C. § 2201 so declaring.[1]

All parties have moved for summary judgment. For the reasons discussed below, I deny the motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### a. Plaintiffs' Insurance Recovery

On July 16, 2001, less than two months before September 11, Plaintiffs paid $2.805 billion to the Port Authority of New York and New Jersey for 99–year net leases to World Trade Center Towers One, Two, Four and Five (together, the "Towers"). Plaintiffs agreed to insure the Towers against property damage for the lesser of "actual replacement cost" or $1.5 billion "per occurrence." *See, e.g.,* Agreement of Lease: One World Trade Center, § 14.1.1. Furthermore, to ensure that Plaintiffs could continue making lease payments even if not receiving rental income, Plaintiffs agreed to insure against "Loss of Revenue/Business Interruption" in such amounts as "reasonably required by the Port Authority" to cover a three-year period of no building operations. *See, e.g., id.* at § 14.1.2. From Defendants and from

other insurers, Plaintiffs procured insurance for the Towers aggregating $3,546,800,000 "per occurrence."

After the Towers were destroyed, and following extensive litigation focused on whether the September 11 terrorist-related crashes of American Airlines Flight 11 and United Airlines Flight 175 constituted one or two occurrences, Plaintiffs settled their claims against their insurers, including Defendants, for approximately $4.1 billion. *See In re Sept. 11 Litig.,* 21 MC 101 (Doc. No. 945) (S.D.N.Y. Sept. 30, 2009); *In re Sept. 11 Litig.,* 590 F.Supp.2d 535, 539 (S.D.N.Y.2008).

### b. Insurers' Subrogation Recovery

Having become subrogated to Plaintiffs' claims, the insurers, including Defendants, filed tort claims against Aviation Defendants to recover the amount of their insurance payments to Plaintiffs. In February 2010, the insurers, including Defendants, entered into a settlement with Aviation Defendants, resolving their aggregate claims for $1.2 billion, with each Defendant recovering an amount proportional to its claims (the "Settlement Proceeds").[2] *See In re Sept. 11 Litig.,* 723 F.Supp.2d at 540. Plaintiffs objected to the settlement but, on July 1, 2010, I approved it as the "fair and reasonable" result of "hard-fought, arms-length, and good faith negotiations." *Id.* at 543–44. On April 8, 2011, the Second Circuit affirmed. *In re Sept. 11 Prop. Damage Litig.,* 650 F.3d 145 (2d Cir.2011).

### c. Plaintiffs' Claims Against Aviation Defendants

In addition to claims against their insurers, Plaintiffs brought tort claims against

---

**1.** Defendant Allianz Global Risks U.S. Insurance Company was omitted from Plaintiffs' First Amended Complaint. Defendants Great Lakes Reinsurance (UK) PLC and Certain Underwriters at Lloyd's, London Syndicates Numbered 33, 1003, 2003, 1208, 1243, 0376,

506 and 1225 were dismissed with prejudice by stipulation on November 20, 2012.

**2.** The settlement also resolved the claims of certain uninsured loss plaintiffs. *See In re Sept. 11 Litig.,* 723 F.Supp.2d 534 (S.D.N.Y. 2010).

Aviation Defendants. With respect to these claims, I held that any tort recovery by Plaintiffs would be limited to the lesser of the loss in the fair market value of the leaseholds (from their value immediately prior to the Towers' destruction) or the leaseholds' replacement costs, and that the loss in fair market value was the lesser of these amounts. *In re Sept. 11 Litig.*, 590 F.Supp.2d at 541–44. I then determined that loss to be $2.805 billion as Plaintiffs failed to submit a showing that the fair market value changed between execution of the leases and September 11. *In re Sept. 11 Litig.*, 2009 WL 1181057 (S.D.N.Y. Apr. 30, 2009). Plaintiffs' maximum tort recovery is therefore $2.805 billion.

In defending against Plaintiffs' tort claims, Aviation Defendants sought by motion to collaterally offset their potential tort liability by Plaintiffs' insurance recovery pursuant to N.Y. C.P.L.R. § 4545. Because such an offset "is authorized only when the collateral source payment represents reimbursement for a particular category of loss for which damages were awarded," *Oden v. Chemung County Indus. Dev. Agency*, 87 N.Y.2d 81, 84, 637 N.Y.S.2d 670, 661 N.E.2d 142 (1995), and "the issue of correspondence ... presents issues of complexity and nuance," I held that trial will be necessary to determine whether the insurance recovery and the tort loss sufficiently correspond. *In re Sept. 11 Litig.*, 889 F.Supp.2d 616, 622–23 (S.D.N.Y.2012).

### d. The Present Action

Plaintiffs allege in this declaratory judgment action that they have priority with respect to certain of Defendants' Settlement Proceeds pursuant to the subrogation provisions of Defendants' respective insurance policies. The insurance policies issued to Plaintiffs by Defendants Certain Underwriters at Lloyd's, London Syndi-

cates Numbered 1212, 79 and 2791 and QBE Insurance (Europe) Ltd. (together, "WilProp Defendants") follow the WilProp 2000 policy form (the "WilProp Form"). The subrogation provision of the WilProp Form states in relevant part that "[i]f any amount is recovered as a result of [subrogation] proceedings, the net amount recovered after deducting the costs of recovery shall be distributed first to the Insured in reimbursement for the deductible amount retained and for any uninsured loss or damage resulting from the exhaustion of limits under this policy or primary or excess policy(ies)." WilProp Form, VII.B.1. With respect to WilProp Defendants, Plaintiffs seek a declaration that "Plaintiffs are entitled to ... [s]ettlement recoveries obtained by [WilProp Defendants] from the Aviation Defendants in the tort litigation in their alleged capacities as subrogees of ... Plaintiffs."

The insurance policy issued to Plaintiffs by Defendant Industrial Risk Insurers ("IRI") follows IRI's Comprehensive All Risk Form (the "C–AR Form"). The subrogation provision of the C–AR Form states in relevant part that "[t]he net amount of any recovery after deducting the costs of subrogation proceedings shall be divided between each party instituting such proceedings in the same proportion as each such party has borne the provable loss." C–AR Form, IV.C. With respect to IRI, Plaintiffs seek a declaration that "Plaintiffs are entitled to ... [t]he appropriate share of settlement recoveries obtained by Defendant IRI from the Aviation Defendants ... in its alleged capacity as a subrogee of ... Plaintiffs."

### III. SUBJECT MATTER JURISDICTION

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such lim-

its as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese–Costa, P.C. v. Dupont,* 565 F.3d 56, 64 (2d Cir.2009) (internal quotation marks omitted). Plaintiffs initially alleged that the Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs failed, however, to plead sufficiently the citizenship of all the Lloyd's Underwriter Defendants and now admit that complete diversity is lacking.[3]

▮ Plaintiffs allege that the Court has federal question jurisdiction, 28 U.S.C. § 1331, pursuant to the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101 note et seq. ("ATSSSA").[4] Section 408(b)(3) of ATSSSA provides that "[t]he United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."

▮ Despite its seemingly broad reach, "the 'all actions brought for any claim . . . resulting from or relating to' language in Section 408(b)(3) does not vest the Southern District of New York with jurisdiction over actions involving economic losses that would not have been suffered 'but for' the events of September 11 but otherwise involve no claim or defense raising an issue of law or fact involving those events." *The Canada Life Assurance Co. v. Converium*

*Rückversicherung (Deutschland) AG,* 335 F.3d 52, 59 (2d Cir.2003) (footnote omitted). Thus in *Canada Life,* the Second Circuit found that Section 408(b)(3) did not provide jurisdiction for a contract dispute between a reinsurer and a retrocessionaire regarding reimbursement payments for insurance claims resulting from the terrorist attacks of September 11.[5] "[W]hile the terrorist attacks of September 11 [were] alleged as a 'but for' cause of the contract dispute, the actual events of that day are irrelevant to a resolution of the dispute, even though the insurance losses were caused in part by them." *Id.* at 57.

The same is true of this action. Plaintiffs seek a declaratory judgment of their priority as to the Settlement Proceeds. Priority depends on the interpretation of insurance contracts. The specific events of September 11 are irrelevant and thus ATSSSA does not directly provide the Court with jurisdiction. *See id.; Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's, London,* 75 Fed.Appx. 799, 801 (2d Cir.2003); *Port Auth. of New York & New Jersey v. Allianz Ins. Co.,* 443 F.Supp.2d 548, 554 (S.D.N.Y.2006).

▮ Finally, it is alleged that the Court has supplemental jurisdiction over this action. The Court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 245 (2d Cir.2011). Subsection (a) of § 1367 pro-

---

**3.** For a discussion of how the citizenship of Lloyd's underwriters is determined for diversity jurisdiction, see *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925 (2d Cir.1998).

**4.** While this action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts," so "there must be an independent basis of jurisdiction before a district

court may issue a declaratory judgment." *Correspondent Servs. Corp. v. First Equities Corp. of Florida,* 442 F.3d 767, 769 (2d Cir. 2006).

**5.** A reinsurer is "[a]n insurer that assumes all or part of a risk underwritten by another insurer," and a retrocessionaire is "[a] reinsurer of a reinsurer." *Black's Law Dictionary* (9th ed.2009).

vides in part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." For purposes of § 1367(a), claims form part of the same case or controversy if they "derive from a common nucleus of operative fact." *Shahriar*, 659 F.3d at 245. "In determining whether two disputes arise from a common nucleus of operative fact, we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir.2006) (internal quotation marks omitted).

■ This case is deeply entwined with much of the September 11 litigation over which I have been presiding. The claims of Plaintiffs' declaratory judgment action are directly related to Plaintiffs' tort claims again Aviation Defendants and Defendants' subrogated claims against Aviation Defendants, claims which are part and parcel of the property damage claims resulting from or relating to the terrorist-related aircraft crashes of September 11, over which this court has exclusive jurisdiction pursuant to ATSSSA. Because substantial overlap exists, the exercise of supplemental jurisdiction over this action is appropriate. That the jurisdiction-providing federal claims are not in this action (but in related actions) does not change this conclusion. *Id.* Moreover, if the Court declined to exercise supplemental jurisdiction, this dispute would have to be filed in state court, which would waste judicial resources, potentially lead to contradictory results and "contradict Congress' desire for uniformity and expertise in dealing with these cases." *In re Sept. 11 Liab. Ins. Coverage Cases,* 333 F.Supp.2d 111, 117 (S.D.N.Y.2004).

## IV. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[A] motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *The Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir.2008).

■■ The parties agree that the insurance policies are to be construed in accordance with New York law, under which interpretation of an insurance policy is generally a question of law. *See, e.g., Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 115 (2d Cir.2005). "[T]he cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties should control. Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided. As we have stated before, the meaning of particular language found in insurance policies should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes." *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 183–84 (2d Cir.2003) (internal quotation marks omitted). "[M]ere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and under-

standable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact" *Goldman v. Metro. Life Ins. Co.,* 5 N.Y.3d 561, 571, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods Corp. v. Com. Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir.2002) (internal quotation marks omitted).

## V. ANALYSIS

### a. The WilProp Form

 The WilProp Form provides that "[i]f any amount is recovered as a result of [subrogation] proceedings, the net amount recovered after deducting the costs of recovery shall be distributed first to the Insured in reimbursement for the deductible amount retained and for any uninsured loss or damage resulting from the exhaustion of limits under this policy or primary or excess policy(ies)." [6] Plaintiffs contend that this provision grants Plaintiffs priority with respect to WilProp Defendants' Settlement Proceeds (after deducting the costs of recovery and aside from the deductible amount retained) until Plaintiffs have recovered their actual losses. WilProp Defendants contend that this provision grants Plaintiffs priority with re-

spect to WilProp Defendants' Settlement Proceeds (after deducting the costs of recovery and aside from the deductible amount retained) only if Plaintiffs have legally recoverable tort damages exceeding Plaintiffs' insurance recovery. At the heart of the parties' dispute is the meaning of the phrase "any uninsured loss or damage," which is not defined nor elsewhere used in the WilProp Form. Plaintiffs argue that the phrase unambiguously refers to all categories of loss and damage, while WilProp Defendants argue that it unambiguously refers to that which is legally recoverable in a tort lawsuit.

 The phrase's context is critical to its interpretation. "Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought" *Currier, McCabe & Assocs., Inc. v. Maher,* 75 A.D.3d 889, 906 N.Y.S.2d 129, 131 (2010). Here the phrase lies within the policy's subrogation provision. *See Mazzaferro v. RLI Ins. Co.,* 50 F.3d 137, 140 (2d Cir.1995) ("A contract of insurance must be read as a whole, including any introductory clause or heading, to determine the intent of the parties."). "Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss. The principle has a dual objective. It seeks, first,

6. Defendants' subrogation rights are governed by their respective policy terms. *See SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC,* 2008 WL 2358882, at *11 (S.D.N.Y. June 10, 2008); *J & B Schoenfeld, Fur Merchants, Inc. v. Albany Ins. Co.,* 109 A.D.2d 370, 373, 492 N.Y.S.2d 38 (N.Y.App. Div.1985) ("[W]here the right of an insurer to subrogation is expressly provided for in the policy, its rights must be governed by the terms of the policy."); 2 Allan Windt, *Insurance Claims and Disputes* § 10:5 (5th ed. 2012) ("[I]f an insurance policy does contain a subrogation provision and this provision somehow limits the insurer's right to subrogation, the insurer will not be entitled to equitable subrogation in contravention of the terms of the policy.").

to prevent the insured from recovering twice for one harm, as it might if it could recover from both the insurer and from a third person who caused the harm, and, second, to require the party who has caused the damage to reimburse the insurer for the payment the insurer has made." *Winkelmann v. Excelsior Ins. Co.,* 85 N.Y.2d 577, 581, 626 N.Y.S.2d 994, 650 N.E.2d 841 (N.Y.1995) (citations omitted).

The damages relevant to subrogation are legally recoverable tort damages. Those are the damages for which WilProp Defendants recovered the Settlement Proceeds for, as Plaintiffs' subrogees, WilProp Defendants could not recover for anything else. This strongly suggests that WilProp Defendants' interpretation is correct. *See Global Int'l Marine, Inc. v. U.S. United Ocean Servs., LLC,* 2011 WL 2550624, at *17 (E.D.La.2011) ("[I]n light of the fundamental purposes of subrogation, the measures of wholeness must be the amount of damages to which the insured is legally entitled, not simply the amount sought by the insured.").

■ Proper interpretation also requires consideration of the broader context, namely "the business purposes sought to be achieved by the parties." *Hartford Fire,* 345 F.3d at 184. Under Plaintiffs' interpretation, Plaintiffs could recover more from WilProp Defendants than Plaintiffs could recover from Aviation Defendants even if Plaintiffs realized their full tort recovery from Aviation Defendants. There would be no point to a subrogation action if Plaintiffs' interpretation prevailed for subrogation would serve to further compensate the insured rather than to mitigate the cost of insurance payments to the insurer. This would confound the business purposes of subrogation. *See Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 135 (2d Cir.

1986) (cautioning that in interpreting insurance policies, "absurd results should be avoided").

For these reasons it is clear that the phrase "any uninsured loss or damage" unambiguously refers to legally recoverable tort damages and not actual losses. Under the WilProp Form subrogation provision, Plaintiffs gain priority with respect to WilProp Defendants' Settlement Proceeds (after deducting the costs of recovery and aside from the deductible amount retained) only if Plaintiffs have legally recoverable tort damages exceeding Plaintiffs' insurance recovery.

### b. C–AR Form

■ The C–AR Form provides that "[t]he net amount of any recovery after deducting the costs of subrogation proceedings shall be divided between each party instituting such proceedings in the same proportion as each such party has borne the provable loss." The issue with respect to the C–AR Form is identical to that with respect to the WilProp Form except that this provision addresses a proportional share of subrogation proceeds, rather than priority as to the subrogation proceeds, and the phrase at the heart of the parties' dispute is "provable loss," rather than "any uninsured loss or damage." For the same reasons as discussed with respect to the WilProp Form, it is clear that the phrase "provable loss" unambiguously refers to legally recoverable tort damages. Under the C–AR Form subrogation provision, Plaintiffs may recover only if Plaintiffs have legally recoverable tort damages exceeding Plaintiffs' insurance recovery.

## VI. CONCLUSION

Based on the above interpretations of the subrogation provisions of both the WilProp Form and C–AR Form, Plaintiffs

must establish legally recoverable tort damages exceeding their insurance recovery before they can seek recovery of any Defendant's Settlement Proceeds. Because Plaintiffs have not satisfied this condition, Plaintiffs' motion for summary judgment is denied. However, it remains possible that Plaintiffs will satisfy this condition. Defendants' motions for summary judgment are therefore denied.[7]

The Clerk shall mark these motions (Doc. Nos. 92, 101 and 104), as well as the moot motion for summary judgment by the recently-dismissed Defendants (Doc. No. 96), terminated.

SO ORDERED.

---

7. Defendants QBE Insurance (Europe) Ltd. and Certain Underwriters at Lloyd's, London Syndicates Numbered 1212, 79 and 2791 moved not for summary judgment but for partial summary judgment, asking the Court to find that the WilProp Form "grants priority to ... Plaintiffs only to the extent ... Plaintiffs demonstrate the existence of uninsured, legally recoverable tort damages." As in deciding the motions for summary judgment I have ruled on the proper interpretation of the relevant portion of the WilProp Form subrogation provision, the motion for partial summary judgment is academic and is for that reason denied.